[Civil No. 1386.    Filed March 31, 1915.]

[147 Pac. 714.]

MARY AILEEN CUNNINGHAM and PATRICIA JULIA CUNNINGHAM, Minors, by and through EMIL MARKS, as Guardian of the Estates of said Minors, Appellants, v. MARY M. COSTELLO, as Executrix of the last Will and Testament of MARTIN COSTELLO, Deceased, Appellee.

1. APPEAL AND ERROR—RESERVATION OF GROUNDS OF REVIEW—MOTION FOR NEW TRIAL.—The failure to move for a new trial waived all questions triable upon such a motion.

2. ESTOPPEL—ESTOPPEL BY DEED.—Where a person liable to account to C. for the proceeds of a sale of certain mining claims made a settlement with C.'s widow and administratrix, which was approved and confirmed by the probate court, and the widow individually executed a deed of release, settlement and compromise, she was thereby estopped from claiming anything further from the proceeds of the sale.

[As to estoppel against married women, see note in 57 Am. St. Rep. 169.]

**3. TRUSTS—ENFORCEMENT—LACHES.**—C., who it was claimed owned an interest in mining claims under an agreement whereby defendant's testator held the title to such claims in trust for himself and C., died in 1899. Defendant's testator died in 1911, and the only other witness to the facts bearing upon C.'s right in the claims died in 1909. All of the claims were sold prior to or in 1906. C.'s widow assigned her rights in the claims to her minor children in 1912, having taken no steps in the meantime to enforce such rights, except to consult an attorney in 1911. She claimed that the delay was due to the false and fraudulent statements and promises of defendant's testator; that C. was not a citizen; that the titles were bad; that she and her children would eventually get all that was coming to them; and that to let the facts be known would result in a loss of the property—but it appeared that she knew that the statements concerning her husband's citizenship were false, though she did not know their effect, and she concealed from her attorney her claim and such promises. *Held,* that no sufficient excuse appeared for the delay in enforcing her rights, and the trial court did not err in holding that they were barred by laches.

[As to when equity will refuse relief on account of laches, see notes in 54 Am. Dec. 130; 2 Am. St. Rep. 795; 23 Am. St. Rep. 148. As to enforcement in equity of stale claims, see note in Ann. Cas. 1914B, 314.]

APPEAL from a judgment of the Superior, Court of the County of Cochise. Frank O. Smith, Judge. Reversed and remanded by order in case No. 1382, *ante,* p. 447.

For statement of facts, see *Costello* v. *Cunningham, ante,* p. 447.

Mr. Eugene S. Ives and Mr. C. Roy Morfoot, for Appellants.

Mr. Joseph Scott, Messrs. Ellinwood & Ross, Mr. Ben Goodrich, Messrs. Williams & Flanigan and Mr. Lee O. Woolery, for Appellee.

CUNNINGHAM, J.—This is an appeal by the plaintiffs from the judgment involved in the case of *Mary M. Costello, as Executrix, etc., Appellant,* v. *Mary Aileen Cunningham and Patricia Julia Cunningham, Minors, by and through Their Guardian, Emil. Marks, Appellees,* numbered 1382, just decided, *ante,* p. 447, 147 Pac. 701. For the statement of the

facts we refer to the statement and opinion rendered in that cause.

These appellants made no motion for a new trial, and they therefore waived all questions triable upon a hearing of such motion. As we have ordered the judgment vacated at the instance of the appellee and instructed the granting of a new trial, a further consideration of the record is unnecessary, but in view of a new trial, we deem it advisable to consider appellant's first assignment of error and discuss the questions thereby raised, to a limited extent. Said assignment is as follows:

"The court erred in adjudging that plaintiffs could not recover upon the assigned interest of Julia Cunningham, because it was found by both the jury and the court that Costello at no time repudiated the interest of the heirs of Cunningham, or any of them, in the mining claims mentioned in the complaint or in the proceeds of the sales thereof."

In the case of the appeal of the defendant we have held that the proceeds of the sale of the Wagner group of six mines, in Costello's hands, were as to the Cunningham claims, personal property; that the title to such interest vested upon the death of Cunningham in the administratrix of the estate of Cunningham, and was satisfied by the payment by Costello to Julia Cunningham as the representative of that estate, and the settlement and satisfaction was approved and confirmed by the probate court. By her deed of release, settlement and compromise, made in her individual capacity, Julia Cunningham released all her interest and claim in and to the said funds. She is estopped by her deed to claim anything further of said fund. The rights she claims in an undivided interest of the other 11 mines, or any of them, accrued to her upon the death of Patrick Cunningham, if at all.

Cunningham died on July 1, 1899. Upon that date Julia Cunningham's rights, as the surviving widow, accrued to her. These rights, if any existed, arose in two ways: one was an undivided one-half interest of the estate, legal or equitable, acquired by Cunningham in the mines during the coverture, and owned at the time of his death (this was her community property right in the property); the other was her rights in the separate property of Patrick Cunningham, owned by him prior to their marriage, and was a life estate in an undivided

one-third of the mines so owned by him.  Patrick and Julia Cunningham married on November 21, 1894.

James Reilly, Martin Costello and Julia Cunningham were the only witnesses to the important facts bearing upon and limiting Julia Cunningham's rights in the properties held by Martin Costello at the time her rights accrued and became enforceable.  The evidence is without conflict that she took no steps to enforce her rights until after the death of James Reilly.  He died on the 8th day of June, 1909.  The first steps were taken just prior to the death of Costello, who died on the 15th day of September, 1911.  Julia Cunningham executed her transfer and deed of assignment of her rights to the plaintiffs under date of February 24, 1912.  Thereafter this action was commenced.  About 10 years elapsed from the date of Patrick Cunningham's death, and therefore the rights of Julia Cunningham became vested before Reilly died.  Two more years passed, and Martin Costello died.  Another year passed before Julia Cunningham conveyed her claim to these plaintiffs.  At the time this claim was transferred about 13 years had gone by, and during all that time Julia Cunningham made no attempts to establish and enforce her claim, other than to employ an attorney shortly before September 15, 1911.  Her claim, if she had any, was in the real estate until Costello converted the real estate into money, and then, if she ratified the conversion, her claim was against the money.  She knew Costello had been paid all the money during the year 1911, at the time when she saw Costello at Tucson and when she demanded that he pay her.  This he refused to do. Nearly a year later she made the transfer.  She had known since 1906, when the deeds were recorded, that the mines had been sold, to whom, and the amount of consideration received. Reilly was alive then, and died about three years later, but she made no effort to enforce her rights.  Costello lived two years after Reilly died, and five years after the last of the mines were sold and the deeds recorded.  Julia Cunningham contends that she was lulled into resting her claim by the false and fraudulent statements and promises of Costello, to the effect that Patrick Cunningham was not a citizen, the titles were bad, and that she and her children would eventually get all that was coming to them, and that to let these facts be known would result in a loss of the property.

Mr. Pomeroy, section 21, volume 5, Equity Jurisprudence, volume 1, Equitable Remedies, says:

"The true doctrine concerning laches has never been more concisely and accurately stated than in the following language of an able living judge: 'Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.' The following definition has probably been more often relied on by recent cases than any other proceeding from an English judge: 'The doctrine of laches in courts of equity is not an arbitrary or technical doctrine. When it would be practically unjust to give a remedy, either because the party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or when, by his conduct and neglect, he has, perhaps, not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterward to be asserted in either of these cases, lapse of time is most material.' The language of an able western court in a very recent case (*Wilson* v. *Wilson,* 41 Or. 459, 69 Pac. 923,) describes the general doctrine with notable accuracy: 'Several conditions may combine to render a claim or demand stale in equity. If by the laches and delay of the complainant it has become doubtful whether adverse parties can command the evidence necessary to a fair presentation of the case on their part, or if it appears that they have been deprived of any such advantages they might have had if the claim had been seasonably insisted upon, or before it became antiquated, or if they be subjected to any hardship that might have been avoided by reasonably prompt proceedings, a court of equity will not interfere to give relief, but will remain passive; and this although the full time

may not have elapsed which would be required to bar a remedy at law. If, however, upon the other hand, it clearly appears that lapse of time has not in fact changed the conditions and relative positions of the parties, and that they are not materially impaired, and there are peculiar circumstances entitled to consideration as excusing the delay, the court will not deny the appropriate relief, although a strict and unqualified application of the rule of limitations would seem to require it. Every case is governed chiefly by its own circumstances.' ''

16 Cyc. 163, 164, says:

''Where a suitor before proceeding permits such a lapse of time that the evidence has become obscured or lost, relief will be denied because of the difficulty of doing justice. While the rule requires for its support no element of estoppel, but is founded on public policy, the fact that the delay has tended to defeat defendant's power to prove his right is an additional reason for its application. . . . The loss or obscuration of evidence will be presumed from a considerable lapse of time. A specific application of the general rule just stated is in the refusal of the courts to afford relief to one who has lain idly by until the important witnesses to the transactions involved have died. Of course the result is the same where the testimony so lost is that of participants in the transaction, who would be parties to the suit had they lived; but where such parties die there are usually difficulties presented in procuring evidence and conducting the case, other than those arising from the loss of their own testimony, and relief is denied for that reason.''

The excuses for the delay offered by Julia Cunningham are the false and fraudulent statements and promises made by Costello, inducing her to execute and deliver the deeds of release. The statements relied upon were concerning the citizenship of Patrick Cunningham. She knew they were false when made but did not know their effect. Not knowing the effect, she concealed her claim from her attorney. The promises relied upon are shown to have not been kept. They are not shown to have been false promises. They could be fraudulent in effect by inducing Julia Cunningham to rely upon them to her disadvantage. Why she concealed the promises from her attorney does not appear. The effect of the excuses is ignorance of the law governing her rights. No sufficient excuse

clearly appears from the record justifying the delay, and we cannot say, as a court of equity, that the trial court erred in rejecting the claim of Julia Cunningham. The action of the lower court is therefore affirmed in this particular.

The judgment has been vacated, and cause remanded, under our order entered in case No. 1382. No further order is necessary.

ROSS, C. J., and FRANKLIN, J., concur.