[Civil Nos. 1560, 1561.   Filed May 9, 1918.]

[172 Pac. 664.]

MARY AILEEN CUNNINGHAM and PATRICIA JULIA CUNNINGHAM, Minors, by and through EMIL MARKS, as Guardian of the Estates of Said Minors, Appellants, v. MARY M. COSTELLO, as Executrix of the Last Will of MARTIN COSTELLO, Deceased, Appellee, and MARY M. COSTELLO, as Executrix of the Last Will of MARTIN COSTELLO, Deceased, Appellant, v. MARY AILEEN CUNNINGHAM and PATRICIA JULIA CUNNINGHAM, Minors, by and through EMIL MARKS, as Guardian of the Estates of said Minors, Appellees.

1. APPEAL AND ERROR—HARMLESS ERROR—CORRECT RESULT.—Error committed on trial with reference to matters connected with claims from which no portion of the money adjudged to be paid by defendant in the accounting is found to have arisen was harmless to defendant.

2. APPEAL AND ERROR — REVIEW — WEIGHT OF EVIDENCE.—The supreme court will not determine the weight of evidence and revise the jury's verdict, reached from conflicting evidence, to conform to its own idea of the weight of such evidence.

3. APPEAL AND ERROR—REVIEW—EVIDENCE—CONCESSION BY APPELLANT. Defendant-appellant's concession in her brief that the evidence pre-

sented by plaintiffs as to two items of the account in suit is sub-
stantially the same as on former trial, and held sufficient by the
supreme court, relieves the supreme court of the necessity of com-
paring the evidence in the record relating to the two items with such
evidence in the former record.

4. EVIDENCE—WEIGHT—GRADES.—The jury must determine the weight
to be given all evidence submitted, though it be of different grades.

5. EVIDENCE — RECORD EVIDENCE — DOCUMENTS SIGNED BY ADMINISTRA-
TRIX AND GUARDIAN.—Documents filed, signed, and sworn to by an
administratrix while such and also guardian of the estate of minors,
being record evidence, are deemed of very high grade as evidence of
pertinent facts to which they relate.

6. TRUSTS—EXISTENCE—SUFFICIENCY OF EVIDENCE.—In an action for an
accounting by heirs against the executrix of another decedent with
respect to mining claims alleged to have been held in trust by the
executrix's decedent for the heirs' decedent, evidence *held* sufficient
to support the jury's finding that a trust existed with respect to
certain claims.

7. APPEAL AND ERROR—SECOND APPEAL—MATTERS CONCLUDED—RES AD-
JUDICATA.—Where, on former appeal in an action for an accounting
with respect to mining claims held in trust, an assigned claim was
finally adjudicated, such claim will not be considered on second
appeal.

8. APPEAL AND ERROR—PREJUDICIAL ERROR—REFUSAL TO SUBMIT EVI-
DENCE.—If substantial evidence has been received on trial which
would sustain verdict for plaintiffs finding defendant liable to ac-
count, and the trial court refused to submit the evidence to the jury
for their determination of the fact, it committed error prejudicial
to plaintiffs.

9. TRUSTS—EXISTENCE OF AGREEMENT—SUFFICIENCY OF EVIDENCE.—In
an action for an accounting with respect to mining claims alleged to
have been held in trust by defendant executrix's decedent for the
ancestor of plaintiff heirs at law, evidence *held* sufficient to justify
an inference that a trust agreement was in existence with reference
to certain claims.

10. TRIAL — EQUITABLE ACTIONS — SUBMISSION OF CONTROVERTED QUES-
TIONS.—Under Civil Code of 1913, paragraph 542, as to submitting
to the jury questions of fact in equitable actions, in an action for
an accounting with respect to mining claims alleged to have been
held in trust by defendant executrix's decedent for the ancestor of
plaintiff heirs at law, the court should have submitted to the jury,
by appropriate interrogatories, a question as to· the existence of a
trust with relation to a claim on which the evidence was conflicting.

[As to right to a jury trial, in action at law where equitable de-
fense is interposed, see note in Ann. Cas. 1913D, 168.]

XIX Ariz.—33

APPEAL from a judgment of the Superior Court of the county of Cochise. Alfred C. Lockwood, Judge. Affirmed and cause remanded for trial of additional matters.

The purpose of the action, the material issues joined in the pleadings, and the material facts appear in a statement in 16 Ariz. 447, 449, 147 Pac. 701, where the report of the decision of this court on a former cross-appeal of this case may be found. A restatement of the case is not deemed necessary with a reference to the former appeal decision. The following opinion sufficiently sets forth the amendments introduced and the material changes in facts occurring in the last trial.

Mr. Eugene S'. Ives, Mr. Wm. B. Cleary, and Mr. Chas. R. Morfoot, for Appellees-Appellants.

Mr. Joseph Scott, Mr. Ben Goodrich, Mr. J. S. Casey, and Messrs. Ellinwood & Ross, for Appellant-Appellee.

CUNNINGHAM, J.—For convenience and brevity I shall refer to the parties as plaintiffs, meaning the original plaintiffs, and defendant, meaning the original defendant, as we did in the former appeal.

The defendant, Mary M. Costello, executrix of the last will of Martin Costello, deceased, in her former appeal, complained of certain errors in the judgment and of error in the order refusing a new trial. The plaintiffs, Mary Aileen Cunningham and Patricia Julia Cunningham, minors, by their guardian, on their former appeal complained of error in the judgment only. We expressed a separate opinion upon each of said appeals, but decided the cause upon the defendant's appeal.

The eminent counsel and the lower court on a return of the cause below seem to have been unable to fully agree as to the effect of our former decision upon the new trial. A brief reference to these matters in dispute, with reference to the binding scope of our decision, may clarify to some extent such seeming misunderstanding.

The purpose of the action is to enforce an accounting for certain alleged items. The interest of the plaintiffs in the said alleged items, an accounting for which is sought, is of an equitable nature. The equitable right accrued by oral contract made between Martin Costello and Patrick Cun-

ningham at a time prior to the acquisition of the said items for which an accounting is sought. The items constituting the account for which plaintiffs are seeking an accounting consist of the net proceeds of the sales of 17 named mines. It is conceded that the said mines were sold by, and the purchase price paid to Martin Costello, and the amount of the purchase price received by him, and the dates upon which he received each separate amount. The plaintiffs admit that the record title to all of said mines was in Martin Costello's name at and before the dates of sale. They allege that pursuant to said contract between said parties the mines were acquired by the said contracting parties as tenants in common, each owning an equal share in said mines, and the titles thereto were conveyed to or held in Costello's name for their mutual convenience, and held by Costello in trust for the use and benefit of himself and Patrick Cunningham. Plaintiffs expressly ratify the sales of the said mines by Costello, and by this action are seeking an accounting from his estate for the proceeds of such sales.

The several items for which an accounting is sought may be fairly stated as consisting of the several separate sales made by Costello. Briefly, these items are as follows: Sale of the "Senator," "Senator No. 2," "Pride," "Hope," "Wagner," "Giberalta," and "Buckeye," for a consideration of $300,-000, dated November 9, 1899; sale of the "Irish Mag," "George Washington," "Old Republican," and "Angel" (the "Irish Mag" group), for a consideration of $200,000, dated November 9, 1899; sale of the "Supplement," "Hattie Manchester," "Belflower," and "Smogler," for a consideration of $300,000, dated April 2, 1903; and the sale of the "Leo" and "Roy" for a consideration of $169,112, dated May 14, 1904.

The defendant admitted the existence of the said contract, but limited its application to the proceeds of the sale of the "Senator," "Senator No. 2," "Pride," "Hope," "Wagner," and "Giberalta," and denied that such contract had any application or effect upon the remaining 11 mines. She set forth a settlement had of the proceeds of the sale of the said six mines on a basis of $247,776.80, and payment in accordance therewith to the administratrix of the estate of Patrick Cunningham, deceased, the guardian of the plaintiffs, minors, and Julia Cunningham, the heirs at law of said Patrick Cun-

ningham, deceased, and a release of the trust by said Julia
Cunningham acting in the said several capacities, and the
approval of her said act in behalf of the said estates by the
probate court. She also pleads laches and the statute of
limitations. The plaintiffs replied, admitting the receipt of
the alleged amount paid, the settlement had and the due ap-
proval by said court, but attacked the settlement as unfair
to their interests in the particular of wrongful charges against
them and upon other grounds.

The trial first had resulted as indicated in the former
decision by this court. The defendant was adjudged liable
to account for the net proceeds of the sale of the "Irish Mag"
group and the "Belflower" and "Smogler" mines and for
interest. The effect of that judgment was to relieve defend-
ant from the necessity of accounting for the net proceeds
of the sale of the "Wagner" group and "Giberalta," the
"Buckeye," the "Leo," the "Roy," the "Supplement," and
the "Hattie Manchester." We sustained the lower court's
conclusion that the item of account arising from the sale of
the "Wagner" group was settled and finally disposed of by
the settlement, payment of the amount agreed upon, and the
approval of the said settlement and payment by the probate
court. With reference to the pleadings, the nature of the
action, the purpose sought, and the conclusion reached with
respect to the scope of that settlement, no doubt should exist
that such settlement and compromise completely covered the
item of the account arising from the sale of the "Senator,"
"Senator No. 2," "Pride," "Hope," "Wagner," "Buck-
eye," and "Giberalta," conveyed by Martin Costello and
his wife by a single deed to Lake Superior & Western De-
velopment Company for the consideration of $300,000. The
basis of the settlement was the consideration received by
Costello for the mines, omitting the "Buckeye." In dealing
with this matter on our former consideration of the case, we
frequently referred to the six claims, omitting the "Buck-
eye." This omission arose from the fact that the declaration
of trust omitted to name the "Buckeye" mine. It had been
included with the other six claims in the same deed, and the
consideration fixed by the deed and admitted to have been
paid was the lump sum of $300,000. Said lump sum is made
an item of the account in the complaint. Such item was
finally disposed of on the former appeal, and such disposition

of such item carried with it, as a necessity, relief from ac-
counting for the proceeds of the sale of the "Buckeye" claim.
The compromise of that item effected a settlement for the
proceeds of the sale of the "Buckeye" claim. At the time
such settlement was had the proceeds of such sale consisted
of money, and Julia Cunningham, as the representative of
Patrick Cunningham, deceased, was legally entitled to re-
cover the same, or discharge the debtor with the approval
of the probate court. This occurred. The statute of limi-
tations bars further recovery by accounting for the proceeds
of the sale of the "Buckeye."

The net result of the former appeal was to finally dispose
of the item in the alleged account arising from the said sale
of the "Wagner" group of five claims, the "Giberalta" and
the "Buckeye" claims; also to finally dispose of the claim
of Julia Cunningham as the surviving wife and heir at law
of Patrick Cunningham, deceased—the assigned claim of
Julia Cunningham—on the ground of laches.

The alleged account being thus modified, the cause was re-
manded to the lower court for the determination by that court
of the defendant's duty to account to the plaintiffs as the
minor heirs at law of Patrick Cunningham, deceased, for
their proportion of the net proceeds of the sales of the
"Irish Mag," "George Washington," "Old Republican," and
"Angel" mines sold November 9, 1899, and for which
$200,000 was thereafter paid as one principal item; and for
their portion of the net proceeds of the sale of the "Hattie
Manchester," "Belflower," "Smogler," and "Supplement,"
sold for a gross consideration of $300,000, as another prin-
cipal item; and their portion of the net proceeds of the sale
of the "Leo" and "Roy" claims, sold for a gross considera-
tion of $169,112, as a third principal item. The question
of damages for the detention of any money which may have
been received by the trustee and detained by him, if such
was a fact, was left open.

With this brief reference to the effect of the former de-
cision, I will proceed to discuss the controversies presented on
this appeal.

The plaintiffs amended their complaint before the termina-
tion of the last trial in the lower court. The plaintiffs state
that the amendments made consist of three important feat-
ures: (1) Affecting the acquisition of the four claims of the

"Irish Mag" group; (2) affecting the "Leo," "Roy," and "Supplement"; and (3) affecting the amount of damages for detention.

Such seems to be the effect of the said amendments, generally stated.

Upon the pleadings so amended and the reply, original reply abandoned, the cause went to trial. At the conclusion of the evidence a large number of interrogatories were submitted to the jury under the direction of the court. The jury returned answers thereto, and upon a return of the jury's said special verdicts both sides moved for judgment. The plaintiffs moved for judgment on the verdicts and special findings by the jury. The defendant moved for judgment notwithstanding the verdict. The plaintiffs had judgment for $105,577.55 and costs and interest. The amount of the judgment was determined by the court from the facts found by the jury by their special verdicts. From such facts the court reached the conclusion, briefly stated, as follows:

That at the time of the death of Patrick Cunningham he owned an equitable one-half interest in the "Irish Mag," "George Washington," "Angel," "Old Republican," "Belflower," "Smogler," and "Hattie Manchester" mines, and as his separate property he owned said interest in the "Irish Mag," "George Washington," "Old Republican," and "Angel," which he acquired prior to his marriage, and he acquired said interest in the "Belflower," "Smogler," and "Hattie Manchester" after his marriage, and said interest was at the time of his death community property; that Martin Costello held the legal title to all of the aforesaid claims, subject, however, to a trust in favor of Patrick Cunningham as to said equitable one-half interest therein; that the trust in the case of the "Hattie Manchester" was an express trust, and that the trust in the other named claims was a resulting trust, arising by reason of equal contributions by said parties toward the purchase of said six claims; that the releases executed by Julia Cunningham as the guardian of the estate of plaintiffs, minors, etc., were ineffective as releases of said minors' rights in the said claims; that plaintiffs are entitled to recover from defendant one-half of the net proceeds of the sale of the "Irish Mag," "George Washington," "Old Republican," and "Angel" claims, less a life interest in one-third of such

sum, "which amount so to be recovered has been fixed by an accounting held by stipulation since the verdict herein at the sum of $49,702.55"; that plaintiffs are entitled to recover one-fourth of the net proceeds of the "Belflower," "Smogler," and "Hattie Manchester." The "said one-fourth has been determined by an accounting held by stipulation since the verdict herein to be the sum of $55,875," with interest on the said sums from the twenty-sixth day of March, 1912, the date of said accounting, until the twentieth day of September, 1915, the agreed date of rendering judgment, at the rate of six per cent per annum, and at the legal rate thereafter until satisfied.

The defendant appeals from the judgment and order refusing a new trial. Such appeal, as is evident, only attacks that portion of the judgment which forces an accounting for the net proceeds of the sale of the "Irish Mag," "George Washington," "Old Republican," "Angel," "Belflower," "Smogler," and "Hattie Manchester" claims, and does not attack the judgment in the particular of the remaining other claims, as it does not require an accounting for the net proceeds of the sale of the same, viz., "Leo," "Roy," "Supplement," and "Buckeye" claims.

The plaintiffs appeal from the judgment and from the order refusing them a new trial. Such appeal is an express attack on the order refusing a new trial, as the judgment denies to plaintiffs, as heirs of Patrick Cunningham, an accounting of the net proceeds of the sale of the "Leo," "Roy," "Supplement," and "Buckeye" claims, and the plaintiffs' notice of appeal limits their appeal to said matter and to that portion of the judgment which denies plaintiffs damages for the detention of the sums of money plaintiffs were awarded, from the dates upon which Costello received such money up to the date of filing the demand against the estate of Martin Costello, at the rate of six per cent per annum, and to that portion of the judgment which denies plaintiffs' recovery of said portions of the proceeds of the sales of said four claims. The plaintiffs' notice of appeal expressly limits their appeal to such matters as may be corrected by means of a partial new trial, as prescribed by paragraph 597 of the Civil Code of 1913.

For convenience I will first consider the defendant's appeal.

## DEFENDANT'S APPEAL.

The facts found by the special verdicts of the jury applicable to the "Irish Mag" group of mines, composed of the "Irish Mag," "Old Republican," "George Washington," and "Angel" claims, hereafter, when referred to as a group of four claims, I shall so refer to such group as the "Irish Mag" group, and the "Belflower," "Smogler," and "Hattie Manchester" claims, may be briefly stated as follows (the figures indicate the number of the interrogatory in the body of which the fact is found):

(2) Patrick Cunningham, on or about the eleventh day of November, 1890, in consideration of a power of attorney to James Reilly, paid to Mrs. Daley $1,000, (3) out of his own funds and for his use and benefit. (4) Said $1,000 so paid for said power of attorney was a part of the $3,000 purchase price paid to Mrs. Daley for her one-half interest in the "Irish Mag" claim and her entire interest in the "George Washington," "Old Republican," and "Angel" claims. (5) That James Reilly, as attorney in fact of Mrs. Daley, on or about the sixteenth day of September, 1892, did execute and deliver to Martin Costello a deed of Mrs. Daley's said interest in said claims named. (6) That said deed was executed and delivered upon Martin Costello's promise to Mrs. Daley to pay the remaining $2,000 of the purchase price. (7) Martin Costello, at the time of or prior to the time he purchased an undivided one-half interest in the "Irish Mag" claim theretofore owned by Mrs. McDowell, which interest he purchased by paying a consideration therefor of $3,000, promised Patrick Cunningham that said Cunningham should be an equal owner in said claim with Martin Costello. (8) Martin Costello did not purchase the "Irish Mag" group with his own funds, (9) nor for his sole and individual use and benefit. (9A) Costello paid the $2,000 of the purchase price after he sold the said group of claims. (16A) Martin Costello paid to Pete Johnson $1,000 for the "Belflower" and "Smogler" claims. (16B) Patrick Cunningham advanced to Martin Costello $500 of said sum prior to purchase of said claims. (17) Costello did not purchase said two claims with his own funds, (18) nor for his sole use and benefit. (19) Patrick Cunningham paid to Martin Costello $500 toward the purchase price of the "Belflower" and "Smogler" claims. (20) Cunningham delivered to Costello money which he intended to be

used in the purchase of said two claims prior to the time when Costello acquired the title to said claims. (21) Costello was advised by Cunningham of the intention with which the money was delivered and of the purpose for which it was intended to be used. (22) Costello used the money so delivered to him for the purpose intended, viz., in the payment of the purchase price of the said "Belflower" and "Smogler" claims. (26A) At the time said two claims were conveyed to Martin Costello by Peter Johnson, Martin Costello promised Patrick Cunningham that the title thereto would be held by Martin Costello as trustee for Patrick Cunningham and himself as equal owners thereof. (27) Patrick Cunningham purchased an undivided one-half interest in the "Hattie Manchester" claim, paying therefor in assessment work. (28) Said Cunningham acquired and paid for the other one-half interest in said claim prior to the ninth day of December, 1897, and on that date he conveyed the title to Martin Costello. (29) Before the execution of said deed Costello in writing requested Patrick Cunningham to so arrange the title to said claim to the end that they, Cunningham and Costello, would be in it as they were in together on all the rest. (30) By reason of such request, Cunningham thereupon conveyed the entire title to said claim to Costello. (31B) Costello paid to Patrick Cunningham the sum of $50 as consideration for said conveyance of the "Hattie Manchester" claim. (32) Martin Costello promised Patrick Cunningham that he would hold the legal title to said claim as trustee for himself and Patrick Cunningham as equal owners thereof.

The following additional facts, referring to the maintenance of the title in the seven claims were also found by the special verdicts:

(34) Patrick Cunningham to the time of his death performed half of the annual assessment work on the "Irish Mag" group, except Costello at one time paid to Cunningham $100 on account of such annual work. (39) Costello promised to pay Cunningham at the rate of $5 per day for his services in connection with the annual work done on the "Irish Mag" group, and on the "Smogler," "Belflower," and "Hattie Manchester." (49) Martin Costello frequently promised Julia Cunningham, after the death of Patrick Cunningham, that when he sold the "Irish Mag" group and the "Smogler," "Belflower," and "Hattie Manchester" claims,

that he would give the heirs of Patrick Cunningham half of the net proceeds of the said claims.

Other facts touching the seven claims are found and will be noticed in connection with the matters to which they relate, ~iz., the matters of settlement and compromise, and damages for the detention of the proceeds of the sale of mines.

The errors assigned by the defendant are numerous, and have reference to many incidents transpiring in the course of the trial. A large number of such assignments have reference to matters connected with the "Wagner" group of claims, the assigned claim of Julia Cunningham, and the accounting for the net proceeds of the "Leo," "Roy," "Sup-. plement," and "Buckeye" mines. No portion of the money adjudged to be paid by defendant in accounting to plaintiffs is found to have arisen from either of said sources; consequently defendant has clearly suffered no injury by reason of errors committed with regard to such matters. I deem this statement entirely sufficient to dispose of all such questions as they are affected by the defendant's appeal.

The defendant assigns as error the insufficiency of the evidence to sustain the jury's findings referred to above as Nos. 2, 4, 5, 6, 7, 9A, 26A, 32, and 34; that is, the defendant contends that the evidence is insufficient to establish these facts: That Patrick Cunningham paid Mrs. Daley $1,000 in consideration of her granting to James Reilly her power of attorney; that said $1,000 was a part of the $3,000 purchase price paid to Mrs. Daley for her one-half interest in the "Irish Mag" claim, and her entire interest in the "George Washington," "Old Republican," and "Angel" claims; that on the sixteenth day of September, 1892, Mrs. Daley, through her attorney in fact, James Reilly, executed and delivered to Martin Costello a deed conveying to said Costello her said interests in said claims and that said deed was delivered upon Martin Costello's promise to pay the remaining $2,000 purchase price, as set forth in a certain letter; that Martin Costello promised that Patrick Cunningham and himself should be equal owners in the "Irish Mag" claim at the time Costello purchased an undivided one-half interest thereof from Mrs. McDowell; that Costello paid the said $2,000 for the Daley interests after the claims were sold by him; that Martin Costello promised Patrick Cunningham that he would hold the legal title to the "Smogler" and "Belflower" claims pur-

chased from Peter Johnson as trustee for said Cunningham and himself as equal owners therof; and that Martin Costello promised Patrick Cunningham that he would hold the legal title to the "Hattie Manchester" claim as such trustee for the benefit of himself and Patrick Cunningham as equal owners thereof.

Defendant's opening brief, page 74, concedes that the evidence presented by the plaintiffs "as to the 'Belflower' and 'Smogler' is substantially the same as upon the former trial and held sufficient by this court." The defendant therefore submits a request that we re-examine such evidence for the reason a new mass of evidence has been offered by the defendant. This is a request of this court to determine the weight of such evidence and revise the jury's verdict reached from conflicting evidence to conform to our idea of its weight. Such course has not been followed by this court, and will not be followed by me in this instance. The verdict of the jury, supported by substantial evidence, is binding upon the lower court and upon this court as establishing the fact found. The defendant's concession with respect to the evidence concerning the "Smogler" and "Belflower" relieves this court of the necessity of comparing the evidence relating to these two mines in this record with such evidence in the former record. The judgment, in so far as it requires the defendant to account for the net proceeds of the sale of the "Smogler" and "Belflower," must necessarily be determined as proper and sustained by substantial evidence. At the former trial the same determination was reached from the same evidence as was reached at the last trial. The net proceeds of the sale of these two claims are separate items of the second principal item of the alleged account.

Have the findings of the jury of the equitable rights of Patrick Cunningham in the "Irish Mag" group and the "Hattie Manchester" the support of substantial evidence, is the next important inquiry. The defendant bitterly attacks the testimony of Mrs. Julia Cunningham as unworthy of belief for many reasons, the principal of which is that her testimony is contradicted by testimony of a grade higher than oral testimony and therefore controlling. But this is, in effect, saying that the testimony which contradicts the testimony of said witness is entitled to the greater weight. If

so, the jury must determine the weight to be given all testimony submitted to them.

The testimony with regard to the acquisition of the title to the "Irish Mag" group is substantially the same in this record as presented in the record on the former trial, as far as the evidence in said former trial went. In addition to the evidence submitted by the former appeal, this record contains the circumstances transpiring at the time the Reilly power of attorney from Mrs. Daley was obtained. The evidence is clear that Costello and Cunningham discussed the circumstances surrounding the acquisition of said power of attorney in the presence of Mrs. Julia Cunningham. From this witness' testimony it appears that Patrick Cunningham left off his work, took $1,000 in money to Mrs. Daley at an early hour in the morning, and had her to accompany him (Cunningham) to a notary public, where she accepted the money, executed the Reilly power of attorney, and delivered the paper to Cunningham as a contract of sale of her interest in the "Irish Mag" group. Another witness testified to having seen $1,500 in Cunningham's possession as he (Cunningham) was on his way to see Mrs. Daley, and on Cunningham's return this witness saw a paper in Cunningham's possession in all respects similar to the Reilly power of attorney and Cunningham had only $500 in his possession. The transaction was a surprise to Costello. Thereafter, up to the date of Cunningham's funeral, Costello treated the "Irish Mag" group as the property of himself and Cunningham, and at the date of Cunningham's funeral he squarely admitted that Cunningham owned from the beginning an undivided half interest in said group.

Defendant urges with great seriousness that the many contradictions in the evidence presented by documentary items and by letters should have the effect of destroying all of the testimony of Mrs. Cunningham so contradicted. The record abounds in probate court documents filed, signed, and sworn to by Mrs. Cunningham while administratrix of the estate of Patrick Cunningham, deceased, and as guardian of the estate of these minors, which, being record evidence, is always deemed of very high grade evidence of facts pertinent thereto, and of which they relate; but the claims made, the property appraised, the property reported to the probate court by means of the said documents, all pertain to the prop-

erty belonging to said estates without dispute. The mines accounted for in said two probate proceedings are the "Wagner" mines. The only manner in which the duty to account for the net proceeds of the sale of the other eleven mines is by a system of elimination by inference. That because said statements and reports do not mention mines or interest in mines other than the "Wagner" group, that this is evidence contradicting the claim of interest in any and in all mines other than in the mines mentioned. This is argument, but does not preclude the jury from lawfully believing the truth of the witness' story. Strictly, the documentary evidence mentioned does not conflict with Julia Cunningham's evidence relating to the additional claim now made in behalf of the heirs of Patrick Cunningham. If such probate proceeding, the reports and documents in such estate matters, should be given effect as evidence, as here contended for, property belonging to an estate first discovered after the estate is closed would be wholly lost to the rightful owners. The finding by the jury that we have been considering with regard to the "Irish Mag" group has the support of substantial evidence, and the finding justifies a decree requiring an accounting by the defendant estate for the proceeds of the sale of said group; that is, the first above-mentioned principal separate item of account is sustained by the proof.

With regard to the "Hattie Manchester" claim, the evidence is without conflict of a serious nature that Cunningham paid Allie Howe at least the value of one year's assessment work for his one-half interest in said claim, and that he paid Tom Concannon $50 for the other half interest of said claim, and the entire title was conveyed to said Cunningham; that thereafter Costello suggested in a letter to Cunningham that they, meaning Costello and Cunningham, had just as well be in on that claim as they were on all of the others; that Cunningham conveyed the said "Hattie Manchester" to Costello, and in the deed of conveyance the consideration therefor is expressed as the sum of $50 paid by Costello.

This testimony, with the other facts and circumstances in evidence, substantially sustains the findings and judgment, and the finding justifies a decree requiring an accounting by the defendant estate for the net proceeds of the sale of the "Hattie Manchester" claim as a separate item of the second principal item of the alleged account, thus leaving the pro-

ceeds of the sale of the "Supplement" included in said second principal item open to future inquiry.

As a consequence, the judgment and portions thereof from which the defendant appeals is without error, and must be affirmed in so far as the same requires an accounting for the net proceeds of the sale of the "Irish Mag" group of four claims, the "Hattie Manchester," and of the "Belflower" and "Smogler" claims. The effect of this judgment on the matter of accounting was to require defendant to account for the first alleged principal item, and to account for the second in part. She is adjudged not liable to account for the proceeds of the sale of the separate item of the second principal item consisting of the proceeds of the sale of the "Supplement," nor for the third mentioned item of the alleged account.

## PLAINTIFFS' APPEAL.

The plaintiffs confined their motion for a new trial to the matters touching an accounting for the proceeds of the sales of the "Supplement," "Leo," "Roy," and "Buckeye" mines, the assigned claim of Julia Cunningham, and damages for detention. Their motion was denied. The effect of such proceeding was to deny to the plaintiffs an accounting for the items mentioned, the net proceeds of the sales of the "Leo," "Roy," "Supplement," and "Buckeye" mines, the assigned claim of Julia Cunningham, and interest on the money received as damages for its detention. The judgment rendered for plaintiffs did not include an accounting for said items. Plaintiffs have expressly limited the scope of their appeal to said order refusing a new trial with respect to said items.

The assigned claim of Julia Cunningham is *res adjudicata* in its entirety, and the discussion of the same must be dismissed with that statement. On the former appeal (16 Ariz. 479, 147 Pac. 714) that claim was finally adjudicated.

The trial court declined to submit to the jury the consideration of the "Leo," "Roy," "Supplement," and "Buckeye" claims. The agreed statement of the facts, page 1440, folios 4306 and 4307, of the abstract of record contains the following:

"The plaintiffs requested the court to submit to the jury interrogatories with respect to the interest of the plaintiffs in the 'Leo,' 'Roy,' 'Supplement,' and 'Buckeye' claims, or the proceeds thereof, which interrogatories the court refused

to present to the jury, upon the ground that, as a matter of law, the plaintiffs, under the evidence, were not entitled to any interest in said claims or either of them, or the proceeds thereof, said refusal being based upon the objection of the defendant to any interrogatories being submitted to the jury regarding said 'Leo,' 'Roy,' 'Supplement,' and 'Buckeye' claims.''

Plaintiffs grounded their motion for a new trial upon the court's said order refusing to submit said matters. Such motion was denied. Plaintiffs assign such refusal order as error, alleging that ''for the reason that under the evidence and the law . . . the plaintiffs were . . . entitled to have appropriate interrogatories submitted to the jury with respect to each of said claims, which, if answered as contended for by plaintiffs, would have either supported or necessitated judgment in favor of plaintiffs with respect to their alleged interest therein.''

The question is presented by a number of assignments, and plaintiffs' contention in this respect is answered by solving the inquiry whether the record contains evidence of a substantial nature tending to establish facts from which the reasonable inference may be drawn that Costello held the title to said ''Leo,'' ''Roy,'' and ''Supplement'' claims in trust for the uses and benefits of himself and Cunningham.

The assignments present the reverse of that which is presented upon the allegation that the evidence is insufficient to sustain the verdict and judgment. If substantial evidence has been offered and received during the course of the trial, which would sustain a verdict for the plaintiffs finding that defendant is liable to account for the proceeds of the sale of either of said three claims, and the court refused to submit the evidence with respect to such items to the jury for their determination of the fact, the plaintiffs have been denied a trial to that extent and are injured thereby. No error was committed by the court in refusing to submit interrogatories with respect to the ''Buckeye,'' for the reason the proceeds of the sale of said claim were not involved, as we have seen above.

With this inquiry in view, we will refer briefly to the evidence affecting the ''Leo,'' ''Roy,'' and ''Supplement'' items. The ''Leo'' was located December 12, 1895, and the ''Roy'' was located December 7, 1895. The location notice

of each is signed by Martin Costello as locator and Pat Cunningham as witness. These location notices were recorded February 20, 1896, at the request of James Reilly. Mrs. Cunningham testifies as to the circumstances under which they were located, and the testimony tends to show that Patrick Cunningham discovered the ground, performed all the acts of location required by law, procured the location notices from Costello after some delay, and always claimed an interest in the claims equal with Costello. Such testimony is not the subject of dispute. Can one say as a matter of law that but one reasonable inference can be drawn from such evidence? The fact that the name of Pat Cunningham appears at the foot of each notice, but appears under the word "witness," indicates his presence and participation in the location. The further fact is in evidence that the "Leo" claim was so called in honor of Costello's son Leo, and that the "Roy" claim was so called in honor of Roy Morfoot, the relative of the Cunninghams, a member of their family, and at that time a warm friend of Leo Costello. These are small circumstances, but worthy of consideration as throwing light upon the close relation existing between Martin Costello and Patrick Cunningham. The heirs of Patrick Cunningham have alleged that a contract had actual existence; that pursuant to its terms these claims were located, and by said agreement Patrick Cunningham located these claims in Costello's name; that by the terms of said agreement the said parties thereto held equal rights therein, and that Costello held the legal title in trust for their equal use and benefit, pursuant to said trust agreement.

The defendant admits that five claims other than the eleven claims in controversy on this appeal were acquired by the parties and held by Costello as alleged, with the exception that Costello's trust required him to account to Cunningham for the interest so held after a sale was made. They deny that the eleven mines, including the "Leo," "Roy," and "Supplement" claims, acquired by original location, were so acquired and impressed with such trust.

The reasonable inference to be drawn from such facts and from such admission is that a like contract was in existence with the contract embracing the five "Wagner" mines concededly acquired near the same time, but prior to the time of location, and that the said "Leo" and "Roy" locations

were made by Cunningham in the name of Costello in pursuance to such contract then existing. The testimony mentioned is substantial in its nature and reasonably justifies the said inference. True, such is not the only inference to be necessarily drawn from such circumstances, and, this being the situation, the one inference of the two which a jury may draw therefrom, having the support of substantial evidence, is, when determined, conclusive upon the courts, both the trial court and on this court. The question whether the "Leo" and "Roy" claims were held by Costello subject to the said trust agreement was one of the controverted facts in the case with respect to which substantial evidence exists. The trial court, therefore, erred in refusing to submit all of the controverted questions of fact to the jury. Paragraph 542, Civil Code of Arizona, 1913.

The items arising from the proceeds of the sale of the "Supplement" require no extended discussion to determine this appeal. In the former appeal we acted upon such condition, and did not discuss the record as it affected the "Leo," "Roy," and "Supplement," presuming that the trial court would commit no error upon a retrial with respect to the matters we were not required to discuss. The record now before us seems to disclose that the trial court considered our failure to discuss these items was a determination by this court that such items were eliminated from the cause. Such was the result of the objections of defendant's counsel, and the trial court approved the objection.

In order to avoid a repetition of such erroneous understanding, and for no other purpose, I will refer briefly to the remaining questions, the determination of which is not necessary to the disposition of this appeal, in view of the determination reached above that the court erred in arbitrarily withholding from the jury the consideration of controverted questions of fact with regard to the "Leo" and "Roy" claims.

The evidence without dispute shows that the "Supplement" claim was located July 6, 1894. The name of the locator is Martin Costello, and the witness Patrick Cunningham. It was recorded at the request of Martin Costello. The evidence tends to show that Costello and Cunningham were both present on the ground at the time of this location. Other circumstances with regard to this location, the assessment work, claims of ownership, etc., are produced in evidence. The

matters are in controversy. The fact appears that the "Supplement" was included in the same deed of conveyance with the "Hattie Manchester," "Belflower," and "Smogler," and the consideration received by Costello for the four mines was a lump sum of $300,000, and this is the second principal item in said alleged account. These facts should have been submitted to the jury by appropriate interrogatories for their determination. Whether the proceeds of the sale of the "Supplement" mine was an item of the said second principal item of the alleged account was a controverted matter in this lawsuit. A further discussion of the testimony relating to this item is deemed unnecessary at this time.

The interrogatories submitted to the jury with regard to the matter of arriving at the damages for detention of trust money by the trustee are criticised by plaintiffs for uncertainty. Such interrogatories seem to be open to criticism, but the jury found no such damages occurred as a fact. On a trial of the remaining matter, if the question again arises, I presume the court will clearly set forth, by interrogatories, the question involved.

The matter of the community property of Patrick Cunningham in the mines, the equities acquired after his marriage to Julia Cunningham, was mentioned on the former appeal of plaintiffs (16 Ariz. 479, 481, 147 Pac. 714), and that matter is only important to this action in determining exactly the amount of the interest the plaintiffs as heirs at law of Patrick Cunningham, deceased, are entitled to recover of the net proceeds of the sales of said mines in which they have already or may on another trial be able to establish. Patrick Cunningham owned an equity, and that equity existed at the time of the sale. The community property rights are defined by statute and by the decisions of this court. On another trial the law applicable thereto, I presume, will be followed. I adhere, however, to the expressions appearing in said former opinion with regard to this matter. I do not now, and did not then, see the necessity of such expressions. The criticism of counsel to the effect that such expressions are *obiter dicta* is perhaps fully justified. Such expressions, unnecessary at the time, are often made, sometimes with the best of intentions, but regrets follow. However, counsel sometimes show so great an aptness to misunderstand the opinions of the appellate court, when such opinions interfere with their theory

of presenting their side of the case reversed, that these unnecessary expressions are thrown in by the appellate courts as good measure and wholesome advice to counsel for consumption on the trial to follow. Some of the foregoing matters prompted our *obiter dicta* above referred to.

The refusal of the trial court to submit to the jury for consideration the testimony with respect to the claims of plaintiffs for an accounting for their inherited portion of the net proceeds of the sale of the "Leo," "Roy," and "Supplement" mines was, in effect, the denial of a trial of the controverted facts in the case, and it was therefore error to refuse a new trial on motion. For such error the said order is reversed and the cause remanded for a trial of such matters only. The judgment will stand affirmed in so far as the defendant is required to account to plaintiffs for their portion as heirs at law of Patrick Cunningham, deceased, of the net proceeds of the sale of the "Irish Mag," "George Washington," "Old Republican," "Angel," "Belflower," "Smogler," and "Hattie Manchester" mines, as adjudged without modification.

The cause is remanded to the lower court for the trial of the controverted questions with regard to the "Leo," "Roy," and "Supplement" mines only as a partial new trial in such respect. Consequently the cause is remanded, with instructions that the lower court grant to the plaintiffs a trial of the questions and matters pertaining to the "Leo," "Roy," and "Supplement," and when the result of said partial new trial is finally reached, and a final accounting of the whole matter involved is thereby determined, to enter a judgment in accordance with the truth of such whole account as the same is so finally determined.

FRANKLIN, C. J., and ROSS, J., concur.

---

As to record of mining claim as evidence, see note in 7 **L. R. A.** (**N. S.**) 879.