[Civil No. 1784.  Filed June 3, 1920.]

[189 Pac. 1116.]

HENRY NEALE, Administrator With the Will Annexed of the Estate of GEORGE H. NEALE, Deceased, Appellant, v. C. W. HINCHCLIFFE, Administrator of the Estate of EUGENE S. IVES, Deceased, Appellee.

1. ATTORNEY AND CLIENT—HEIRS LIMITED TO QUANTUM MERUIT FOR SERVICES OF DECEASED ATTORNEY.—Where an attorney died, his contract of employment died, and his heirs are limited to a *quantum meruit* for any services rendered by him to his clients in his lifetime.

2. ATTORNEY AND CLIENT — CONTRACT ASSIGNING CONTINGENT FEE AGREEMENT HELD TO OBLIGATE ASSIGNEE TO PAY CERTAIN AMOUNTS.—Contract, whereby associate of deceased lawyer took assignment from heirs of decedent of fifteen per cent contingent fee contract in litigation over an estate, *held* to have obligated assignee to pay decedent's estate $2,000 cash, and $9,000 subsequently on condition that judgment already obtained by decedent or a larger judgment should be collected, but only to pay the $2,000 if a less amount was realized, whether by judgment, execution or compromise, etc.

3. CONTRACTS—RULES OF CONSTRUCTION NOT RESORTED TO EXCEPT IN CASE OF AMBIGUITY.—The intent of the parties to a contract is controlling, and, unless there is some ambiguity in the language used to express it, rules of construction will not be resorted to.

APPEAL from a judgment of the Superior Court of the County of Pima. W. A. O'Connor, Judge. Reversed and remanded, with directions.

Mr. O. Gibson, for Appellant.

Mr. John B. Wright, for Appellee.

ROSS, J.—Appellant, as plaintiff, administrator of the estate of George H. Neale, deceased, insti-

2. Authorities upon question of right to recover for services of attorney who dies before completion of contract are collected in note in Ann. Cas. 1914D, 210.

tuted this suit against appellee, as defendant administrator of the estate of Eugene S. Ives, deceased, upon a written contract to recover the sum of $9,000. Both decedents were lawyers and as such were employed by the Cunningham heirs to represent them in litigation against the Costello estate. The history of the lawsuits, their magnitude and character, may be found reported in 16 Ariz. 447, 147 Pac. 701; 16 Ariz. 479, 147 Pac. 714. Also in 19 Ariz. 512, 172 Pac. 664, on second appeal. They had separate agreements with their clients as to their compensation and services to be rendered. Under date of June 27, 1911, Ives contracted "to render such professional service as may be necessary in the preparation and general management of said litigation from this time until the conclusion of said litigation by the highest appellate tribunal," for "twenty per cent of the amount received from the said Costello, whether by judgment or by compromise." Under date of February 26, 1912, Neale entered into a contract identical with the Ives contract, except that his compensation was to be fifteen per cent of recovery, "whether by judgment or compromise." On January 28, 1913, Neale died. Before his death, however, he and Ives and Roy Norfoot, who was associated with them, had brought suit and tried it in the superior court of Cochise county, and obtained a verdict favorable to the Cunningham heirs. Thereafter, on February 27, 1913, judgment was entered on verdict awarding the Cunningham heirs the sum of about $125,000. On May 20, 1913, the administrator of George H. Neale and Jane Neale, sole beneficiary under his will, as parties of the first part, entered into a written contract with Ives, as party of the second part, which—after reciting in the preamble the history of the litigation up to that date and Neale's connection therewith, together with the fact that defendant had appealed, and plaintiffs also

had appealed, contending the "judgment should have been for a larger amount"—contains the following stipulations:

"Now, therefore, in consideration of two thousand dollars ($2,000) in hand paid by the party of the second part to the parties of the first part, the receipt whereof is hereby acknowledged, and of the agreement of the party of the second part to pay nine thousand dollars ($9,000) conditioned as hereinafter provided, the parties of the first part do sell, assign, and transfer to the party of the second part, his executors, administrators and assigns, all right, title and interest which the said George H. Neale, or the parties of the first part, had or have in or to the said contract, and the said contract and all right, title and interest which the said George H. Neale, or the parties of the first part had or have in the said judgment or claim or the proceeds thereof.

"The party of the second part agrees that if the said judgment be affirmed, or if the Supreme Court should upon the appeal of the plaintiffs direct or render judgment for a larger amount than the amount of the present judgment, and collection be made upon said judgment from the estate of the said Costello, that the party of the second part will forthwith, out of that portion of the proceeds of the said judgment paid to him as attorney and counsellor at law as compensation for his services, pay the sum of $9,000, the said sum to be paid immediately and forthwith upon the receipt of such compensation by the said party of the second part, and the parties of the first part to have a lien and an assignment of the said proceeds to the extent of the said nine thousand dollars ($9,000).·

"If the said action should be compromised, then the said nine thousand dollars ($9,000) is to be paid in the same manner as if the said judgment had been affirmed."

On the same day, to wit, May 20, 1913, the Cunninghams ratified and approved in writing the above sale and assignment of the Neale contract to Ives; the latter agreeing that, should the judgment be re-

versed and a new trial ordered, he would at his own cost and expense, and without cost to the Cunning-hams, employ adequate and satisfactory counsel to assist in any other trial that might be ordered or any subsequent appeal. This instrument also contained this stipulation:

"It is hereby understood and agreed that said Ives shall have a lien upon any amount recovered by judgment or compromise, to the extent of 35 per cent agreed to be paid to him by virtue of these premises and the various contracts hereto annexed."

After the exchange of these different agreements, there was considerable litigation. The Supreme Court ordered a new trial, which was had in due course. From the judgment a second appeal was taken, and the judgment affirmed in part and reversed in part. While in this status, the controversy was compromised by the defendants paying to plaintiffs the sum of $200,000. Before the settlement, Ives died, but his estate has been paid thirty-five per cent of $190,000; $10,000 having been deducted and paid to the Cunningham heirs, by mutual consent of all parties, before the $190,000 was divided between the Cunningham heirs and their attorneys.

These facts all appearing in the pleadings, the court overruled a demurrer to the defendants' answer, and, upon motion of the defendant, entered judgment for the defendant upon the pleadings. The plaintiff appeals to this court, and assigns as errors: (1) The order of the court overruling his demurrer to the answer, and (2) the entry of judgment in favor of defendant upon the pleadings. Other facts appearing in the pleadings will be stated in the course of the opinion. The whole controversy revolves around the meaning that shall be given to the assignment of the Neale contract to Ives, dated the twentieth day of May, 1913. It is the contention

of the appellant that the fair and reasonable import of that contract is that the Neale estate should receive, in addition to the $2,000 payment of cash, a further sum of $9,000, since the litigation was successful and a favorable compromise effected. The contention of appellee is that Ives' liability for the $9,000 was contingent upon the affirmation by the Supreme Court of the judgment for $125,000, or for a larger amount and the collection thereof, or upon a compromise of said judgment, and that, since that particular judgment was reversed, Ives was relieved of any obligation to pay the Neale estate $9,000, even though later a much larger sum was realized by compromise of the action.

It seems to us the construction contended for by appellee is a rather strained, not to say an unnatural, construction of the contract liability assumed by Ives to the Neale estate. His learning and ability were of a very high order. He knew when Neale died that Neale's contract also died, and that the Neale heirs would be limited to a *quantum meruit* for any services rendered by Neale in his lifetime. *Sargent* v. *McLeod,* 209 N. Y. 360, 52 L. R. A. (N. S.) 380, 103 N. E. 164. He therefore took an assignment thereof with the written consent and approval of the Cunningham heirs who thereby became bound to pay Ives the fifteen per cent theretofore agreed to be paid Neale. His obligation to the Neale estate is well guarded and well stated in the contract of assignment. As we read it, he bound himself to pay the Neale estate $2,000 cash and $9,000 later on, upon condition that the judgment already obtained for $125,000 or a larger judgment, should be collected. But if a less amount than $125,000 was realized out of the demand against the Costello estate, whether by judgment and execution or on compromise, then the $2,000 cash was to be the extent of his liability. And if the action should be compro-

mised for $125,000 or more, his liability would follow
"in the same manner as if said judgment had been
affirmed." That is, he would be obligated to the
Neale estate for $9,000. In view of the fact that
Ives had become the owner of the Neale contract
calling for fifteen per cent of any recovery, whether
by judgment or by compromise, and had limited his
liability to the $2,000 cash if the amount of recovery
was less than $125,000, and to the $2,000 cash paid
by him and $9,000 more to be paid "out of the pro-
ceeds" if the collection was $125,000 or more, it would
seem that his contract was a rather harsh one but
for the fact that he obligated himself, at his own
expense, to "employ adequate and satisfactory coun-
sel to assist in any other trial that might be ordered,
or any subsequent appeal." Fifteen per cent of
$125,000 is $18,750, and, under his agreement, the
most he was liable to the Neale estate was $11,000.
However, he had assumed to employ additional coun-
sel in certain contingencies, and the margin above
the $11,000 going to the Neale estate, or at least a
portion of it, he might very reasonably have held in
reserve for that purpose. He did, in fact, on July
14, 1915, contract with W. B. Cleary, a member of
the Arizona bar, to pay him as associate counsel as
follows:

"In the event recovery is not over $80,000, I am
to get $2,000; in any sum from under $100,000,
$2,000; $100,000, $5,000; over $125,000 and under
$150,000, $6,000; over $150,000 and under $200,000,
$8,000; and if $200,000 or more, $10,000. In the
event of any recovery I am to get $2,000 and the
most I can get will be $10,000."

The margin on fifteen per cent of $125,000, after
deducting therefrom the $11,000 claimed to be due
the Neale estate, is $7,750, and Ives' liability to
Cleary, under the above contract, would be $6,000,
leaving an excess to Ives of $1,750. Upon the basis

of the compromise and settlement actually effected, to wit, $190,000, the excess going to the Ives estate, after paying Cleary and the Neale estate, is $9,500.

Senator Ives might reasonably have felt that, since the burden of the litigation had fallen to him after Neale's death, he was entitled, after paying additional counsel, to keep some portion of the Neale fee; but we feel that his general purpose—and we gather this from the contract—was to preserve to the estate of George H. Neale, his associate and brother lawyer, as much of the fruits of their common enterprise as he reasonably and fairly could. He certainly did not write into his contract so recently after his colleague had passed on, that he would pay his estate $9,000 in addition to the $2,000 cash in case the judgment for $125,000 was affirmed or a larger judgment was directed by the Supreme Court and collection thereof made, but that he would not pay the Neale estate the additional $9,000 in case he collected by compromise such sum or a greater sum. On the contrary, the contract explicitly says that—

"If the action should be compromised, then the $9,000 is to be paid in the same manner as if the judgment had been affirmed."

Now, how was it to be paid if the judgment was affirmed? It was to be paid "out of that portion of the proceeds of said judgment paid to him (Ives) as attorney and counselor at law as compensation," and the Neale estate was "to have a lien and an assignment of said proceeds to the extent of the said $9,000." The same sum and the manner of its payment upon a compromise is definitely fixed in very plain language.

In all the contracts it was recognized that the proposed litigation might be terminated in three ways: (1) By judgment adverse to the plaintiffs; (2) by judgment favorable to plaintiffs; and (3) by com-

promise. In the first case, all would lose. In the second and third, all would win. This they knew and expected from the start, and in their transactions and agreements the unvarying purpose is manifest to carry out that conception. It is evidenced by the action of the Cunningham heirs in settling with the Ives estate upon the contract, notwithstanding this contract had become inoperative by reason of Ives' death before the litigation was fully terminated and a compromise effected. Ives' estate was paid $68,500, and of this $28,500 was because of the Neale contract. If there be deducted $10,000 paid to Cleary to assist in the litigation in lieu of Neale, and the amount claimed in this suit and the $2,000 cash theretofore paid, still the Ives estate gains by reason of the Neale contract, $7,500.

Of course, we realize that the equities of the case could have no controlling influence if the contract, in plain and unmistakable language, fixed the amount the Neale estate was to receive at the sum of $2,000 cash paid, and we only refer to it for the purpose of emphasizing what seems to us quite obvious, to wit, that Senator Ives took an assignment of the Neale contract, not to speculate on, but to preserve something for the Neale estate.

Counsel for appellee cites us to the rules applied by courts in construing contradictory and ambiguous contracts. We have not discussed such rules for the reason that it does not seem to us that they have any application to this particular contract. The intent of the parties to a contract is controlling, and, unless there is some ambiguity in the language used to express that intent, rules of construction will not be resorted to. It would seem to us that the plaintiff was entitled to judgment on the pleadings. It was therefore error to overrule the plaintiff's demurrer.

The cause is remanded, with directions to the trial court to enter judgment for the plaintiff in the sum of $9,000.

CUNNINGHAM, C. J., and BAKER, J., concur.