[No. 10673.  Department One.  December 19, 1912.]

K. S. Potter, *Respondent*, v. Aetna Life Insurance Company, *Appellant*.[1]

Insurance—Accident Insurance—Cause of Death—Evidence— Sufficiency.  In an action upon a policy insuring against death through accidental means, there is sufficient evidence to sustain a finding that the insured was killed by gas poisoning, where it appears that deceased, a strong healthy man, was the general overseer of an incinerator, in which there occurred imperfect combustion causing smoke to escape to the room where deceased was working on Saturday, that he complained thereof, and was taken ill on Monday morning, and experts testified that his death was caused by gas poisoning.

Appeal from a judgment of the superior court for King county, Tallman, J., entered May 18, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action on a policy of accident insurance.  Affirmed.

*Farrell, Kane & Stratton* and *Smith & Ramey*, for appellant.

*Edgar J. Wright* and *Ballinger, Battle, Hulbert & Shorts*, for respondent.

Gose, J.—This is a suit to recover upon an accident insurance policy, issued by the appellant to Frederick O. Potter. It insured "against disability or death resulting directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means." The basis of the liability as set forth in the complaint is that "on or about the 4th day of May, 1911, the said Frederick O. Potter died in the city of Vancouver, B. C., by reason of the accidental inhalation of certain noxious and poisonous gases or vapors."  There was a verdict and judgment for the plaintiff, the widow of the insured.  The deceased, sixty-two years of age and theretofore apparently a strong, healthy

[1]Reported in 128 Pac. 647.

man, became ill on Monday morning, May 1, 1911, and lingered until Thursday morning at 12:15, when he expired.

Two questions are presented by the appeal, one of law and one of fact: It is contended, (1) that the burden of proof was on the respondent to prove that the insured died by reason of the accidental inhalation of poisonous gases; and (2) that the evidence is insufficient upon that issue to sustain the verdict. Upon the first proposition, it suffices to say that the court instructed in harmony with the appellant's contention.

At the trial of the case, the respondent submitted evidence showing that the deceased was the general overseer of a large incinerator, which had been installed in the city of Vancouver, B. C., for the destruction of the city's garbage; that the incinerator was undergoing a test prior to its acceptance; that on the Saturday night preceding the death of the insured, the dampers were partially closed, and permitted to remain so until Monday morning; that in this manner the temperature was very materially reduced, causing an imperfect combustion; that on Monday morning a large amount of garbage, in which wet ashes predominated, was thrown into the incinerator; that the incinerator was not designed for ashes; that smoke escaped into the unloading room where the deceased was working; that he complained of the smoke to the engineer and asked him "to do something to eliminate the smoke which was terrible on the top floor," and that water was then issuing from his eyes. H. K. Benson, associate professor of industrial chemistry at the state university, testified that smoke always indicates an incomplete combustion, and that in incomplete combustion there is always carbon monoxide, a poisonous gas, present. Dr. W. T. Miles, a graduate of Jefferson Medical College with twenty-five years' experience as a practitioner in medicine and surgery and who had had experience with poisonous gases, in answer to a hypothetical question based upon the evidence, said that death was caused by gas poison. The physician who performed the autopsy said that death was due to myocarditis, and testified

to the same effect. He also testified to the condition of the heart, lungs, liver, and stomach as disclosed at the autopsy. Dr. Miles, in rebuttal, said that these conditions were the effect of gas poison and not the cause of death.

The appellant argues that "the evidence wholly fails to show that there was poisonous gas thrown off by the incinerator in sufficient quantities to produce death." The conditions present at the incinerator on Monday morning, the age and health of the deceased, his illness, and symptoms following to the time of his death on Thursday morning, were detailed in the hypothetical question propounded to Dr. Miles, and he said that death was due to gas poisoning. His testimony is vigorously assailed by the appellant, but the verdict of the jury forecloses inquiry upon the veracity of the witnesses and the weight of the evidence. The physician who performed the autopsy further testified that, if death had been due to poisoning by *monoxide* gas, the blood would have been a bright or cherry red, and that the absence of this color in the blood indicated that death was not due to such poison. Dr. Miles said, in answer to this testimony, that there should have been a microscopic or spectroscopic examination of the blood. Neither of these tests was made. He also said that the color of the blood after death would depend largely upon the mixture of the gases thrown off from the incinerator as a consequence of incomplete combustion. Aside from the conditions present at the incinerator on Monday morning, which were not controverted, the evidence is wholly of an expert character. The physicians differed as to the cause of the death. A detailed discussion of the evidence would be of little value to the litigants and of no value to the bar. Enough has been said to show that there is substantial evidence to support the verdict.

The judgment is affirmed.

MOUNT, C. J., CHADWICK, CROW, and PARKER, JJ., concur.