[Civil No. 1749.   Filed April 7, 1920.]

[188 Pac. 868.]

# ALFREDO DURAZO, Sr., Appellant, v. J. S. AYERS, Appellee.

1. APPEAL AND ERROR—VERDICT ON CONFLICTING EVIDENCE NOT DISTURBED.—A jury finding on a disputed fact as to which the evidence is conflicting will not be disturbed.

2. APPEAL AND ERROR—VERDICT SUSTAINED BY SUBSTANTIAL EVIDENCE WILL NOT BE DISTURBED.—A jury finding sustained by substantial evidence will not be disturbed.

3. LANDLORD AND TENANT—IN ACTION FOR BREACH OF COVENANTS WITH COUNTERCLAIM BY TENANT, BURDEN IS ON LANDLORD.— Where a landlord sued for failure of his tenant to keep an engine, pumping plants, fixtures and things on or about the leased farm in good ·condition and complete repair, and the tenant counterclaimed for failure of the landlord to put the pumping plant in working condition as agreed, the burden was on the landlord, so far as his case was concerned, to establish the tenant's failure to keep the pumping plants in good ·condition and repair.

4. EVIDENCE—BURDEN ON PARTY ASSERTING AFFIRMATIVE.—The general rule is that he who asserts an affirmative has the burden of proving it.

5. EVIDENCE—DEFENDANT HAS BURDEN OF PROVING COUNTERCLAIM.— A defendant pleading a counterclaim occupies the position of a plaintiff and has the burden of proof as to his contention.

6. APPEAL AND ERROR—REFUSAL OF REQUESTED INSTRUCTION NOT REVIEWABLE WHEN NOT PRESENTED IN MOTION FOR NEW TRIAL OR ASSIGNED AS ERROR.—The failure to charge as to the burden of proving a counterclaim is not before the Supreme Court, where no instruction was requested and the failure to so charge was not made a ground for a new trial in the motion therefor or assigned as error in appellant's brief.

7. APPEAL AND ERROR—INSTRUCTION MUST BE REQUESTED IN ORDER TO ASSIGN OMISSION AS ERROR.—Under Civil Code of 1913, paragraph 514, requiring the court to charge the jury, and paragraph 516, authorizing either party to present desired instructions if the instructions given fail to cover all issues or phases of the case, a party must request further instructions on the omitted features before he can assign such omission as error.

8. New Trial—Grant of New Trial on One Issue and Refusal on Another Issue Held Proper.—Where a lease of farming lands required the landlord to put pumping plants in good working condition and provided for a renewal at the tenant's option, and, in a suit by the landlord, the tenant counterclaimed for failure to put the pumping plants in good condition and for refusal to renew the lease, the grant of a new trial to the landlord on the issue of crop failure from failure to put the pumping plants in good condition did not entitle him to a new trial of the issue as to renewal.

APPEAL from a judgment of the Superior Court of the County of Pima. Samuel L. Pattee, Judge. Affirmed and remanded, with directions.

### STATEMENT OF FACTS.

The plaintiff leased to the defendant some farming lands situated near Tucson, Pima county, together with farming implements, some livestock and chickens, for the period beginning the eleventh day of September, 1916, and ending January 1, 1918, with the privilege to the defendant, at his option, to be signified by written notice thirty days before the expiration of his term, to have the lease renewed for one year. The lease contains the following covenants:

"The said lessor covenants that he will immediately put the pumping plant, consisting of what is known as the new well and engine, in good working condition upon said ranch, and that he will, as soon as necessary, and not later than six months from the date hereof, put what is known as the old pumping plant and engine in good working condition. And the said lessee doth hereby covenant with the said lessor that he, the said lessee, during the term of this lease, will keep the farm and buildings, and all things in and about the same, and all fences, irrigation ditches, drains, gates, watercourses, engines, pumping plants, fixtures and other things upon or about said farm lands in good condition and in complete repair."

8. Upon right of trial court to grant new trial upon part of issues only, see note in Ann. Cas. 1913B, 365.

Another condition of the lease was that—

"If default shall be made in any of the covenants herein contained on the part or behalf of said lessee to be paid, kept or performed, then and from thenceforth it shall and may be lawful for the said lessor into and upon said premises and any part thereof wholly to re-enter, and the same to have again, repossess and enjoy as in his first and former estate. . . ."

On or about November 8, 1917, the plaintiff reentered the said premises, took possession of the same, and dispossessed the defendant, and at the same time replevied all the personal property that had been turned over to the defendant except six cows, and in addition, under said writ, took possession of eighty-three tons of barley and alfalfa hay of the 1917 crop.

In May, 1918, the issues having been formed, a trial was had before court and jury. In this trial, all the controverted questions of fact concerning the personal property were settled and determined; but upon the question as to whether the plaintiff or the defendant had breached the contract, or at least upon some of the issues affecting that question, the jury could not agree. Whereupon, the court ordered a partial retrial of the issues and directed that plaintiff and defendant file new pleadings incorporating therein only the issues to be retried.

The plaintiff in his amended complaint set forth three causes of action; but, as the first is not involved in his appeal, we will only state the breaches as assigned by him in his second and third causes. After alleging generally a full performance of the conditions of the contract upon his part, and particularly that he had repaired and placed in good working condition for the use of said defendant two pumping plants, he alleges that the defendant was negligent in the operation of said pumping plants and failed to

operate the same in a workmanlike manner, and carelessly and negligently failed to attend and oversee the working of the said pumping plants when the same were in operation, and carelessly and negligently allowed them to deteriorate; that, by reason thereof, he was required to pay out for repairs and labor on said pumping plants the sum of $1,665.52, for which he asks judgment.

The same breach is assigned in his third cause of action, with some elaboration, and he states that by reason thereof he was unable to irrigate the alfalfa crop on said premises during the year 1918, to his damage in the sum of $9,000, for which he asks judgment.

The defendant, in his answer, denies the allegations of the plaintiff's complaint as set forth in the second and third causes of action, and in a separate defense, by way of counterclaim, the defendant alleges:

That the plaintiff breached his contract, in this:

"That he did not immediately after the execution of said lease contract, or at all, at any time thereafter, put the pumping plant, consisting of what is known as the new engine and well, in good working condition; and that he did not and as soon as necessary, or within six months from the date of said lease contract, or at any time thereafter, put what is known as the old pumping plant and engine in good working condition."

That, by reason thereof, defendant expended the sum of $700 in attempting to place the same in good working condition. That, because said pumping plants were not in good condition, defendant was unable to procure water in sufficient amount to irrigate his crops during the growing season of 1917, and that he suffered damages in the sum of $10,000, for which he asks judgment.

That in due time defendant exercised his option for renewal of the lease for one more year, but that the

plaintiff, notwithstanding, had dispossessed him of the premises and had replevied all of the personal property, including livestock and farming implements, and had refused to renew the lease, to his damage in the sum of $15,000, for which he asks judgment.

The defendant, as a further and separate defense and counterclaim, set forth proper allegations of ownership in himself and conversion by plaintiff of eighty-three tons of barley and alfalfa hay, valued at $2,800, and asks for judgment.

The plaintiff, in his reply to defendant's answer and counterclaim, denied generally all of the allegations of new matter therein set forth, and further alleged that, if the defendant had suffered any damages as set forth in said causes of action, the same were occasioned by the defendant's breach of the contract, and were the result of defendant's own negligence and carelessness, and were not the fault of the plaintiff.

In September, 1918, upon the issues thus formed, a second trial was had; interrogatories were submitted to the jury to be answered by them and returned into court as their verdict; and it was stipulated by the parties that the court should render judgment in accordance with the answers returned, and further that all questions not covered by the interrogatories should be determined by the court and judgment rendered accordingly. The interrogatories and answers returned by the jury are as follows:

"Interrogatory No. 1. Did the plaintiff, Durazo, immediately after entering into the lease contract with Ayers, put the new pumping plant consisting of the new well and engine in good working condition? Answer: No.

"No. 2. Did the plaintiff, Durazo, as soon as was necessary or within six months after the date of the lease contract, put what was known as the old pump-

ing plant and engine in good working condition? Answer: No.

"No. 3. Did the defendant, Ayers, keep the new pumping plant in good condition and in complete repair during the time he occupied the premises under the lease? Answer: Yes.

"No. 4. Did the defendant, Ayers, keep the old pumping plant in good condition and in complete repair during the time he occupied the premises under the lease? Answer: Yes.

"No. 5. If you answer that the plaintiff, Durazo, did not put both or either of the pumping plants in good condition, then did the defendant, Ayers, suffer loss of crops by reason thereof, and, if so, what was the amount of his loss or damage? Answer: Yes, $11,000.

"No. 6. Did the defendant, Ayers, expend money in placing or attempting to place the pumping plants in good condition to use them, and if so, what amount? Answer: Yes, $500.

"No. 7. Did the defendant, Ayers, in good faith and with the honest intent to occupy the leased premises for an additional year give notice to the plaintiff of his intention to avail himself of the privilege of a renewal of the lease? Answer: Yes.

"No. 8. Did the defendant, Ayers, voluntarily relinquish possession of the leased premises during the month of November, 1917? Answer: No.

"No. 9. Was the defendant, Ayers, compelled by the action taken by the plaintiff, Durazo, to vacate the leased premises during the month of November, 1917? Answer: Yes.

"No. 10. If you find that the plaintiff, Durazo, did not put the pumping plants, or either of them, in good working condition, what would it have cost the defendant, Ayers, to have put the said pumping plants, or either of them, in such condition? Answer: $2,000.

"No. 11. What damage, if any, did the defendant, Ayers, sustain by reason of the failure of the plaintiff, Durazo, to renew the lease for an additional period of one year? Answer: $10,000.

"No. 12. Did the plaintiff, Durazo, suffer any loss to the crop of alfalfa during the year 1918 by reason

of the defendant Ayers' failure to keep the pumping plants in good working condition? Answer: No. . . .

"No. 14. Did the plaintiff, Durazo, expend any money in putting the pumping plants, or either of them, in good working condition and in complete repair by reason of the failure of the defendant Ayers to keep them in good condition during his occupancy of said premises, and, if so, what amount? Answer: No."

Upon these findings and the findings of the previous trial in May, 1917, the court concluded as a matter of law: First, that the plaintiff recover nothing on the second amended complaint; second, that he have judgment against the defendant in the sum of $600, being the value of six cows the defendant had failed to return; third, that the defendant recover from plaintiff the sum of $2,800, value of hay seized by plaintiff, and $75, the value of a certain colt belonging to the defendant and converted by plaintiff; fourth, that the defendant have judgment against the plaintiff for the sum of $10,000, damages by reason of plaintiff's failure to put pumping plants in good working condition, and $500 expended by defendant in placing or attempting to place the pumping plants in condition to use them; fifth, that the defendant recover of the plaintiff the sum of $10,000, damages on account of plaintiff's refusal to renew lease for the year 1918; and that the defendant have judgment for his costs taxed at $156.95—and judgment was accordingly entered.

Upon his motion the court granted plaintiff a partial new trial, the order in that regard being:

"That the motion for a new trial is hereby granted as to the judgment . . . in favor of defendant awarding him the sum of $10,000 by reason of alleged failure of the plaintiff herein to put pumping plants on leased premises in good working condition as set out in defendant's first count of his separate defense and counterclaim."

The plaintiff prosecutes this appeal from the judgment and the whole thereof, and also from the order refusing him a new trial of all the issues involved.

Messrs. Wright & Darnell, for Appellant.

Messrs. Richey & Richey, Mr. John D. MacKay and Mr. L. C. Bodey, for Appellee.

ROSS, J. (After Stating the Facts as Above.)—The plaintiff's first contention is that the special verdict of the jury, to the effect that he "did not, immediately after entering into lease with defendant, put the new pumping plant, consisting of the new well and engine, in good working condition," is not justified by the evidence. His claim is that the plant was turned over to the defendant in good working condition, and that there is absolutely no evidence to the contrary. We cannot agree with the plaintiff that there was no evidence to support this special verdict. Several witnesses testified that what is known as the new pumping plant was in bad condition when defendant took possession of the leased premises, some of them entering into a detailed description of defects in the pump. True, others testified in behalf of the plaintiff that it was in good condition. Its condition, therefore, was sharply controverted, and the disputed fact was very properly submitted to the jury. In such circumstances, the rule is that we will not disturb their verdict. *Otero* v. *Wheeler, ante,* p. 50, 185 Pac. 359; *McCord* v. *McCord,* 13 Ariz. 377, 114 Pac. 968; *Southern Pac. Co.* v. *Hogan,* 13 Ariz. 34, 29 L. R. A. (N. S.) 813, 108 Pac. 240; *Cunningham* v. *Costello,* 19 Ariz. 512, 172 Pac. 664; *Rouillier* v. *Schuster,* 18 Ariz. 175, 157 Pac. 976; *Leadville Min. Co.* v. *Hemphill,* 17 Ariz. 146, 149 Pac. 385.

The same complaint is made of the special verdict to the effect that defendant "kept the new plant in

good condition and complete repair during the time he occupied the premises under lease." There was substantial evidence to sustain this finding of the jury, and it also must stand as settled.

The finding of the jury that plaintiff breached his promise to put the "old pumping plant" in good working condition is not questioned by plaintiff. Neither is the one that the defendant expended $500 in an attempt to place the pumping plants in condition for use, or the one that it would have cost $2,000 to put the pumping plants in good working condition.

The next error assigned is that the court, in instructing the jury, placed the burden of proof upon plaintiff to show that defendant did not keep the pumping plants in good condition and complete repair; it being contended that the burden on that issue was upon the defendant. Both the plaintiff and defendant were asking for affirmative relief, each claiming that he had kept and performed all the conditions of his contract, and that the other had breached such contract. The plaintiff, on his part, in three causes of action against defendant had alleged as the gravamen of his complaint that defendant had failed to keep the engine, pumping plants, fixtures and things upon or about said farm in good condition and complete repair. This allegation is repeated by plaintiff in one form or another in each of his three causes of action. Having alleged this breach by defendant as the foundation of his causes of action, he assumed the burden of establishing his allegations. It was up to him to make out his case, and to do so it was incumbent upon him to introduce evidence sufficient to satisfy the triers of the issue that he had not only performed his part of the contract, but that defendant had failed in the performance of his agreement in the particular respects alleged in his complaint as the basis of his causes of action. The general rule

is that he who asserts an affirmative has the burden
of proving it. 10 R. C. L. 898, § 48; 16 Cyc. 926.
From his standpoint as a plaintiff, it was incumbent
upon him to establish his case as made by his plead-
ings by a preponderance of the evidence, and, viewing
the instruction as applied to plaintiff's case, it was not
only unobjectionable but proper.

The defendant, as to his counterclaim, occupied the
position of a plaintiff and was under the same obliga-
tion as to the burden of proof as the plaintiff with
reference to his contention. The duty of sustaining
the material allegations of his counterclaim, includ-
ing the breach as alleged by a preponderance of the
evidence, was upon him. Whether the peculiar cir-
cumstances of this case should influence a modifica-
tion of this rule or not, we will not undertake to say
—believing it not to be before us—for the reason the
failure of the court to instruct as to where the burden
of proof lay in regard to defendant's counterclaim
was not made a ground for new trial in motion for
new trial, and, further, it is not assigned as error in
plaintiff's brief. No request for such an instruction
was made, and the omission was not called to the
court's attention in the motion for a new trial.

While our statute makes it the duty of the court to
charge the jury, paragraph 514, Civil Code, it also
gives to either party the right to present "such in-
structions as he desires to have given to the jury."
Paragraph 516, Civ. Code. We think a fair construc-
tion of these provisions should require a party,
where the instructions given by the court fail to cover
all issues or phases of the case, to request further
instructions on the omitted features before he could
assign such omission as error. This seems to be the
generally adopted rule by the courts.

"It is a rule of very general application that if
instructions given are correct as far as they go, it can-

not be assigned as error that the court omitted to instruct on all points involved in the case if the attention of the court has not been directed thereto by special requests for instructions on those points. As was said in an early decision in which Justice STORY wrote the opinion, it is sufficient that the court has given no erroneous directions. 'If either party deems any point presented by the evidence to be omitted in the charge, such party may require an opinion from the court upon that point; if he do not, it is a waiver of it.' If the instructions given are not sufficiently full, or not sufficiently specific, it is held to be the duty of the party who considers himself aggrieved thereby to request fuller or more specific instructions from the court. In the absence of such request, there is no basis for an assignment of error to the giving of such instructions.'' 38 Cyc. 1693.

The two foregoing assignments are directed to errors which, if well taken, would require a retrial of all the issues whether tendered by plaintiff in his several causes of action or by defendant in his several counterclaims. Their rejection for want of merit, however, disposes of the plaintiff's complaint and results in an affirmance of the trial court's judgment, ''That the plaintiff have and recover nothing on his second amended complaint.''

It is next contended by plaintiff that the partial new trial should have been extended to and included the item for refusal to renew lease and issues related thereto, because, as he claims, he cannot be held liable on this count until and unless his liability is established for the item of crop failure for the season 1917, and, since the question of this liability is to be retried, the one for refusal to renew lease should also be ordered retried. He insists that these two items of damages grow out of and depend upon the same issues, and that the order granting a new trial as to one in effect vacated and set aside the findings of fact supporting the other.

The gravamen of the charge as to crop failure and consequent damages for the season of 1917 is the neglect of plaintiff to put pumping plants in good working condition. Defendant's right to a renewal was not dependent upon plaintiff's performance of this condition of the contract. His right to a renewal depended upon his faithfully keeping and performing his covenants, and the jury's verdict upon these issues is positively and unequivocally in his favor.

The order granting a new trial of the liability of plaintiff for crop failure for the season of 1917 did not disturb the verdict or findings any further than to require the defendant, upon a retrial, to establish his allegation that plaintiff had failed to put pumping plants in good working condition, and the damages, if any, he may have suffered by reason thereof. The trial court, acting under paragraph 597, Civil Code, determined the verdict of the jury on the question of plaintiff's liability for damages for crop failure "to be wrong," and that the issues involved therein were separable from the issues going to support the claim for damages for failure to renew lease, and very properly ordered a partial retrial.

The purpose of the statute is to stop litigation in the trial court of all questions that have been regularly settled according to the forms of law, and thereby save parties the burden and expense of retrial if those questions are so disassociated from those infected with error as to permit it. The rule is a wholesome one, and its observance by the trial court, where practicable, is to be commended.

The defendant has a cross-assignment of error in which he complains of the order of the court granting the partial new trial. He asserts in his argument that the reason the court granted such partial retrial was because of the instruction given to the

jury as to the burden of proof, and, inasmuch as the instruction was correct, he contends that the court erred.

We have no way of knowing what prompted the court to grant a partial retrial. The evidence as to the damages the defendant suffered is not in the record. One of the grounds assigned in the motion for a new trial was that the damages awarded defendant were excessive and given under influence and prejudice. A new trial may have been granted upon that ground so far as we can tell from the record.

The judgment of the lower court is affirmed and the cause remanded, with directions that further proceedings be had in accordance herewith.

CUNNINGHAM, C. J., and BAKER, J., concur.