[Civil No. 3244. Filed January 5, 1933.]

[17 Pac. (2d) 1101.]

INTER–STATE FIDELITY BUILDING AND LOAN ASSOCIATION, a Corporation, Appellant, v. JEFF DAVIS HOLLIS and GEORGE L. HOLLIS, Her Husband, Appellees.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Messrs. Cox, Moore & Janson, for Appellees.

LOCKWOOD, J.—Inter-State Fidelity Building & Loan Association, a corporation, hereinafter called plaintiff, brought suit against Jeff Davis Hollis and George L. Hollis, her husband, hereinafter called defendants, seeking to foreclose a real estate mortgage given by the latter to secure the payment of a certain installment note. The complaint contains the usual averments in an action of that nature. The defense was that, when the note which the mortgage secured was signed and delivered by defendants, it was not complete, there being in it three blank spaces which plaintiff was authorized to fill in a certain way, and that the latter filled them in a manner contrary to the authorization given it by defendants. The case was tried before a jury which, in answer to interrogatories, found the defense above described to be true, and the court, adopting such answers, rendered judgment in favor of defendants. From said judgment this appeal has been taken.

There are some twenty-eight formal assignments of error, but, as stated by plaintiff in its brief, the sole

question for us to determine is whether or not the jury and trial court were justified in finding that the rate of interest appearing on the face of the note which was offered in evidence and admitted by defendants to have been signed and delivered by them, was inserted after its delivery. Defendants testified positively and unequivocally that when they signed the note there was no rate of interest specified therein, but that there was a blank space provided in the proper place so that the rate of interest could be inserted, and that plaintiff's agent had agreed with them that the rate of six per cent. would be placed therein. Plaintiff relies on the physical condition of the note as it appears in the record.

It is the rule in this as in most appellate courts, and one from which we have never departed, that where there is a conflict in the evidence so that a reasonable man considering the evidence could take either view of a controverted issue of fact, we will not disturb the findings of the trial court and the jury. *Blackford* v. *Neaves,* 23 Ariz. 501, 205 Pac. 587; *Durazo* v. *Ayers,* 21 Ariz. 373, 188 Pac. 868; *Pacific Gas & Electric Co.* v. *Almanzo,* 22 Ariz. 431, 198 Pac. 457; *Cunningham* v. *Costello,* 19 Ariz. 512, 172 Pac. 664.

It is also the rule that the credibility of witnesses is a question for the jury and not for an appellate court. *Lummer* v. *Unruh,* 25 Cal. App. 97, 142 Pac. 914; *Potter* v. *Aetna Life Ins. Co.,* 71 Wash. 374, 128 Pac. 647; 4 C. J. 848.

But these rules have always had the qualification, sometimes expressed but oftener implied, that the conclusion arrived at by the jury must be such as could have been reached by a reasonable man upon the testimony appearing in the record, and that, where it appears clearly that the evidence on which alone the jury could have reached the conclusion that

it did was so incredible that no reasonable man could have believed it, we will set aside the verdict and judgment on the ground that the jury must have been actuated by passion and prejudice, and not a calm and judicial consideration of the evidence. *Wright* v. *Young,* 20 Ariz. 46, 176 Pac. 583; *Otero* v. *Wheeler,* 21 Ariz. 50, 185 Pac. 359; *Butler* v. *Shumaker,* 4 Ariz. 16, 32 Pac. 265.

This qualification, stated in the abstract, is not seriously disputed by defendants, but it is their contention that it is only when the evidence upon which the jury must have based its verdict is such as to be physically impossible that the court is justified in holding it insufficient to support the verdict.

It is the position of plaintiff, on the other hand, that even though it is not a physical impossibility that the testimony believed by the jury is true, yet if all the surrounding facts are such that it appears no reasonable man could have believed it, the case should be reversed, and that the appellate court may and should use its independent judgment as to whether, notwithstanding the evidence believed by the jury is physically possible, it is, according to the experience of human nature, incredible. The question is one which has never been specifically passed upon in this jurisdiction, and is of some importance. Most of the cases, it is true, in which appellate courts have set aside verdicts on the ground that the testimony on which the verdict must have been based could not have been believed by a reasonable and impartial jury, have been those in which such testimony was, as a matter of physical law, impossible. There are authorities, however, which do not go to this extent. *Kurath* v. *Gove Automobile Co.,* 149 Wis. 390, 135 N. W. 752; *Casey* v. *Northern Pac. Ry. Co.,* 60 Mont. 56, 198 Pac. 141; *Vukmanovich* v. *State Assur. Co. of Liverpool,* 82 Mont. 52, 264 Pac. 933.

After careful consideration, we are of the opinion that a rule which confines the power of the appellate court to reverse for insufficiency of the evidence to those cases alone where the testimony which supports the verdict is concededly a physical impossibility, is too narrow, and that the better rule is that, if such testimony is so incredible as to be beyond the ordinary experience of mankind, and the surrounding facts and circumstances of the case tend to show a situation likely to cause bias and prejudice on the part of the jury, the appellate court should not hesitate to send the case back for a new trial. The principal reason for the ordinary rule that appellate courts will not pass upon a conflict in the evidence or the credibility of the witnesses is that such a court has not the chance of hearing and seeing the original evidence, but only a record or copy of such evidence. This reason, however, does not apply where the physical evidence which was before the jury and which it is claimed makes the oral testimony incredible is itself before the appellate court.

With these rules of law to guide us let us consider the evidence. The uncontradicted oral testimony is to the effect that plaintiff's agent, one Gibbons, went to defendants and urged them to take out a loan of $2,000, secured by the property on which the mortgage was attempted to be foreclosed, and that he presented to them the usual building and loan plan for handling the mortgage, which involved substantially both a loan and the taking out of stock in the company by the borrowers. In such a plan the loan is always at a fixed rate of interest, but the stock is estimated to return such a profit that the *net* interest paid by the borrowers will be a figure much less than the loan could be secured at from other sources. Agents of building and loan companies, however, being paid in whole or in part by commission upon

the sale of stock, frequently fail to make clear to the borrower that the gross rate of interest paid by him on his loan is fixed and definite, while the net cost of the loan is problematical, depending upon the earning value of his stock. As a result many borrowers, not being familiar with the working of the building and loan plan, gather the impression that they are guaranteed a fixed net rate of interest, when as a matter of fact such net rate is merely an estimate, depending upon many circumstances beyond their control.

The evidence before the jury in this case indicates most strongly that this was the method followed by plaintiff's agent in placing the loan, and that defendants honestly believed they were to pay interest only at the rate of six per cent. per annum on the actual note which they signed. According to defendants' own statement they were, while not illiterate, unskilled in the computation of interest and mathematical calculations, and relied entirely upon the representations of the agent who placed the loan as to what would be the rate of interest to be paid by them. A jury believing such a situation to exist in a case where there was an attempted foreclosure of a note and mortgage bearing a higher rate of interest than the one which defendants believed they were paying would be extremely likely to be prejudiced against the plaintiff and in favor of the defendants. This attitude on the part of the jury is both understandable and natural, but notwithstanding that fact juries may not be permitted to return a verdict on account of such circumstances, no matter how they may feel as men, but are bound equally with both trial and appellate judges to render their verdict in accordance with all of the facts as they really exist and the rules of law which ages of experience have shown are applicable to such facts.

The original note upon which the action is based was introduced in evidence and appears in the record before us. With the exception of the words and figures having under them a *single* line and the signatures of defendants, it is entirely printed and reads as follows:

"Note and Agreement

"$2,000.00.　　　Tempe, Arizona, August 20, 1924.

"For value received, we promise to pay to Fidelity Building & Loan Association, a corporation, at its office, at Salt Lake City, Utah, Two Thousand and No/100 ($2,000.00) Dollars principal, and (a) Eleven Hundred Seventy & 40/100 ($1170.40) Dollars interest, in One Hundred Twenty consecutive monthly installments of (b) Twenty Six and 42/100 ($26.42) Dollars per month, payable on the fifteenth day of each month, beginning October, 1924. And in case default for thirty (30) days is made in the payment of said installments, or either of them, as the same become due, then the balance of said principal sum, together with interest accrued, shall thereupon be due, without notice or demand, at the option of the holder of this note, and suit may forthwith be brought to collect the same, and in event suit is brought herein we agree to pay, as attorneys' fees, a minimum of Fifty ($50.00) Dollars, together with an additional sum of ten (10) per cent. upon the amount adjudged to be due over and above Five Hundred ($500.00) Dollars, which sum shall be added to the judgment and such judgment shall bear interest at ten (10) per cent. per annum. The rate of interest on this note is hereby specified to be (c) ten (10) per cent. per annum.

"JEFF DAVIS HOLLIS,
"GEORGE L. HOLLIS."

The underlined words indicated by our insertions (a), (b), and (c) are the ones which defendants claim were filled in after they had signed and delivered the note. All of the words with a single line beneath them are obviously written in by a typewriter, and

under the typewritten words in each case appear a long series of printer's dots and dashes such as are commonly used in instruments to indicate a blank space which is to be filled in in some manner. The words "ten (10)" double underlined are printed in apparently the same type and spacing as the body of the printed instrument, and careful examination by this court directly and by aid of a microscope shows no sign that they were not printed in the same ink and at the same time as the balance of the printed portion of the note, and, further, there is no appearance whatever of dotted lines such as those found wherever typewritten words were inserted in the notes, having at any time been in or under the space occupied by the words "ten (10)." It also appears that the form of note used by plaintiff *before* the execution of the present note carried a blank space with such dotted lines under it for the insertion of the rate of interest, but that at some time the form was changed to carry the printed rate.

It is upon the question as to whether or not these last words were in the note at the time it was signed by defendants or were inserted thereafter that the case turns, for it is agreed by both parties that the other two spaces which defendants claim were blank when they signed the note, and which obviously were filled in at some time by a typewriter, contain the correct amount of total interest and the amount of each installment if the interest is reckoned at 10 per cent., and the note on its face is legally complete, even if blanks (a) and (b) had never been filled in at all. If, therefore, the words "ten (10)" appeared in the note at the time it was signed by defendants and it was delivered by them, as they say, to be filled in properly in the other blank spaces, they are bound on the note as it appears, for there is no contention that they were not able to read and under-

stand it when they signed it. *Realty Adv. etc. Co.* v. *Kells Mfg. Co.*, 85 Misc. 411, 147 N. Y. Supp. 565. Under such circumstances parol evidence would not be admissible to show that there was a previous agreement for a different rate of interest. *Catlin* v. *Harris*, 7 Wash. 542, 35 Pac. 385; *Cochran* v. *Zachery*, 137 Iowa 585, 115 N. W. 486, 126 Am. St. Rep. 307, 15 Ann. Cas. 297, 16 L. R. A. (N. S.) 235.

Reluctant as we are to disturb the verdict of a jury, the physical condition of the note on which this action is based is such that we are compelled to hold that only minds biased, no matter how naturally, by prejudice and passion could fail to have believed that the all important words "ten (10)" were in the note at the time it was signed by the defendants. We do not believe that defendants intentionally testified falsely, but rather that, believing the interest was to be six per cent., and knowing some blanks were to be filled in, they honestly but mistakenly assumed a blank where none existed. Such being the case, we are compelled to set aside the judgment and remand the case to the superior court of Maricopa county for retrial on the ground that it appears clearly the answers of the jury to the vital interrogatories were not justified or supported by competent evidence.

ROSS, C. J., and McALISTER, J., concur.